**REGIONAL JAIL AUTHORITY, Johnson, Lawrence, Magoffin, and Martin Counties, Movant,**

v.

**Thurman TACKETT, (Johnson County Jailer); Lawrence County Fiscal Court; Johnson County Fiscal Court; and Kentucky Jailers' Association, Respondents.**

No. 88–SC–000132–DG.

Supreme Court of Kentucky.

April 6, 1989.

Rehearing Denied June 8, 1989.

Vickie H. Collinsworth, Salyersville, J.K. Wells, Wells, Porter, Schmitt & Walker, Paintsville, Thomas D. Muncy, Inez, Teddy Flynt, Salyersville, for movant.

C.K. Belhassen, David Lemaster, Paintsville, for respondent Tackett.

Nelson T. Sparks, Louisa, for respondent Lawrence County Fiscal Court.

J. Scott Preston, Rice, Preston & Brown, Paintsville, for respondent Johnson County Fiscal Court.

George Gregory, Lexington, for respondent Kentucky Jailers Assn.

VANCE, Justice.

The questions presented by this appeal are:

(1) Does a regional jail authority created pursuant to K.R.S. 441.800 have authority to operate a regional jail by the employment of personnel to manage and operate it, or is the operation of a regional jail within the authority of the county jailer of the county within which the regional jail is located?

(2) Can a county which has joined with other counties in the formation of a regional jail authority subsequently withdraw from the authority unilaterally without the consent of all of the counties involved?

The county jail facilities of Johnson, Lawrence, Martin, and Magoffin counties were on the verge of being closed by the Commonwealth of Kentucky. Each of the counties was faced with a great expense in order to improve its county jail to the point that it would meet standards required by the Commonwealth. The fiscal courts of these four counties explored the possibilities of constructing a regional jail pursuant to K.R.S. 441.800 to serve the needs of all four counties and to that end made application to the Kentucky Local Correctional Facilities Construction Authority for funds to construct a regional jail.

The application for funds set forth the need for a regional jail, that the four counties had agreed to form a regional jail authority for the construction and operation of a regional jail, the size and estimated cost of the project, and a request for a grant totaling 74% of the cost of construction. The application for funds stated that the portion of the cost of construction to be borne by the four counties would be divided among them based upon an equitable allocation formula. This application was signed by the county judge executives of each of the four counties.

The funding was approved and construction of the proposed regional jail was commenced in Johnson County, and each of the four counties contributed their proportionate share of the construction costs until Lawrence County ran short of funds and failed to pay one of the claims allocated to it. Thereupon, the Johnson County Fiscal Court paid the assessment due from Lawrence county and commenced an action against Lawrence County to recover the amount so paid on its behalf. In that action the Johnson County Fiscal Court alleged that Johnson, Lawrence, Magoffin, and Martin Counties had entered into a contract to build a regional jail; that pursuant to contract Johnson County was the lead agent and was responsible for the payments on the bond indebtedness of the four counties; that it had made the payments in full when due; and that Lawrence County was indebted to the Johnson County Fiscal Court for its pro rata share of the payments upon the bonded indebtedness.

On the motion of Lawrence County, the fiscal courts of Martin and Magoffin Counties and the Johnson, Lawrence, Martin, and Magoffin County Regional Jail Authority were joined as parties to the litigation.

Lawrence County Fiscal Court also filed a counterclaim and cross-claim in which it alleged, among other things, that Magoffin and Martin Counties, along with Johnson and Lawrence Counties were members of the Johnson, Lawrence, Magoffin, and Martin County Regional Jail authority formed pursuant to K.R.S. 441.800.

The cross-claim contended that the original appointments of representatives to the regional jail authority from Lawrence County were not valid because the appointments were made by the fiscal court rather

than by the county judge executive as was required by statute.

The cross-claim and counterclaim requested the court to determine the proper composition of the membership of the regional jail authority, including the number of representatives from each county and the persons who validly represented Lawrence County as members of the regional jail authority. Because it is claimed that the representatives of Lawrence County on the regional jail authority were not validly appointed, the court was asked to declare that the actions *to date* of the regional jail authority were invalid insofar as they purported to bind Lawrence County.

Martin County Fiscal Court, in its answer to the cross-claim, admitted that Johnson, Lawrence, Magoffin, and Martin Counties had formed a regional jail authority pursuant to K.R.S. 441.800.

Lawrence County Fiscal Court and Johnson County Fiscal Court subsequently entered into an agreement whereby Johnson County agreed to assume the obligations of the Lawrence County Fiscal Court as they related to the regional jail authority and to release Lawrence County from any further contribution to the regional jail authority, and the Lawrence County Fiscal Court agreed that it would seek no refund of the money it had already contributed for the construction of the regional jail. Johnson County Fiscal Court moved the trial court for approval of that agreement.

While the controversy regarding Lawrence County's continuing obligation to the regional jail authority was pending, another controversy developed as to whether the Johnson County jailer or an administrator designated by the regional jail authority should have charge of the management and operation of the regional jail. The Johnson County jailer, Thurman Tackett, filed a declaratory judgment action asking the trial court to declare that the Johnson County jailer is responsible for the operation and maintenance, including the hiring and firing of all personnel of the Johnson, Lawrence, Magoffin, and Martin Regional Jail located in Johnson County, Kentucky, and that the appointment of Frank Johnson by the regional jail authority as administrator of the regional jail be declared void.

Tackett alleged in his complaint that the Johnson, Lawrence, Magoffin, and Martin Regional Jail Authority is a public body created pursuant to K.R.S. 441.800 for the establishment of a regional jail. In its answer, the regional jail authority admitted the allegation that it was a public body formed pursuant to K.R.S. 441.800 for the establishment of a regional jail.

The Kentucky Jailers' Association was permitted to intervene as a co-plaintiff with jailer Tackett and adopted every allegation contained in his pleading.

These two actions were consolidated for trial. The court determined that the only issues presented were questions of law and issued its judgment therein without any evidentiary hearing.

The judgment, in essence, held that the regional jail authority could designate an administrator who was empowered to operate the regional jail, including the power to hire and fire employees, and that the Johnson County jailer was without any such authority. It held also that Lawrence County had no authority to withdraw unilaterally from the regional jail authority without the consent of all four counties and that the release of Lawrence County by Johnson County was void.

Four separate appeals from this judgment were taken to the Court of Appeals, namely:

1. An appeal by Johnson County Jailer Thurman Tackett.
2. An appeal by the Kentucky Jailers' Association.
3. An appeal by the Lawrence County Fiscal Court.
4. An appeal by the Johnson County Fiscal Court.

All four appeals were heard together by the Court of Appeals and were disposed of in a single opinion. That opinion held that no valid regional jail authority was ever formed pursuant to K.R.S. 441.800 by Johnson, Lawrence, Magoffin, and Martin Counties, and therefore no authority existed for a regional jail authority to name an admin-

istrator to operate the jail. The court further stated that the authority to operate a regional jail constructed by a validly formed regional jail authority resides in the county jailer of the county in which the jail is located.

The question of the right of Lawrence County to withdraw from the regional jail authority unilaterally was mooted by the disposition of the Court of Appeals.

We granted the petition of the Regional Jail Authority of Johnson, Lawrence, Magoffin, and Martin Counties for discretionary review. We reverse the disposition of the Court of Appeals.

In its opinion, the Court of Appeals stated that it considered the basic issue on appeal to be: "Whether there was a valid regional jail authority under K.R.S. 441.800 et seq.—Whether Lawrence County ever entered into the agreement creating the authority, and if so, whether it has the right to withdraw without the consent of all authority members."

Upon review of the record, we have determined that this was not the basic issue, or even an issue at all, before the Court of Appeals. As we have carefully pointed out in the discussion of the proceedings in the trial court, the formation of a regional jail authority pursuant to 441.-800 by Johnson, Lawrence, Magoffin, and Martin Counties was pleaded in the complaint of Thurman Tackett, Johnson County jailer, and in the counterclaim and cross-claim of the Lawrence County Fiscal Court. It was incorporated by reference in the pleading of the Kentucky Jailers' Association. No party in its pleading challenged the fact that a regional jail authority had been formed pursuant to K.R.S. 441.800 by the four counties. Because the valid formation of a regional jail authority was pleaded affirmatively, was subsequently specifically admitted by some of the parties, and was not denied by any of them, the validity of the regional jail authority was not an issue in the trial court.

The only objection of any nature to the regional jail authority which was reached by the pleadings had to do with the composition of the membership of the authority, not with the validity of its formation. Lawrence County raised the issue of whether the members representing Lawrence County named by the fiscal court, or the members later designated by the county judge executive should be adjudged to be the true representatives of Lawrence County on the regional jail authority. This dispute as to the bona fides of the contesting members as to the right to represent Lawrence County on the regional jail authority does not, in the least, raise any question as to whether Johnson, Lawrence, Magoffin, and Martin Counties validly formed a regional jail authority. That fact was simply not denied by any party, and the question in issue before the trial court concerned only the rights of an admittedly validly organized regional jail authority. The trial court decided only those questions.

The Court of Appeals is without authority to review issues not raised in or decided by the trial court. *Matthews v. Ward*, Ky., 350 S.W.2d 500 (1961); *Combs v. Knott Co. Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859 (1940); *Tipton v. Brown*, 273 Ky. 496, 117 S.W.2d 217 (1938).

Thus, there was no basis for the Court of Appeals to review the question of whether a regional jail authority was validly formed pursuant to K.R.S. 441.800. Its decision, based upon such an analysis is, therefore, erroneous.

The Court of Appeals also reviewed the question of whether the jailer of the county in which a validly organized regional jail is located or an administrator appointed by the regional jail authority should operate the jail.

K.R.S. 441.800(1) provides for the establishment of a regional jail authority by two or more counties. K.R.S. 441.800(2) provides that the authority shall have all power necessary and convenient to carry out and effectuate the purpose and provisions of the section, including, but not limited to the following powers:

K.R.S. 441.800(2):

"(b) To acquire property by lease or purchase, construct, reconstruct or renovate

a regional jail and to provide for the operation and maintenance of the facility; and

"(c) To exercise the power, authority and duties of counties under this chapter and other provisions of the Kentucky Revised Statutes related to the operations of jails and the incarceration of prisoners."

We do not find any ambiguity in this statute. It plainly invests the power to operate a regional jail in the regional jail authority. The operation of a regional jail includes the management of the regional jail. A county jailer is invested with the management and operation of a county jail pursuant to K.R.S. 71.020, but only one county is involved and the people of that county elect the jailer to operate the jail. He is responsible to the voters.

A regional jail was formed in this instance by four counties. The citizens of Lawrence, Magoffin, and Martin Counties have no voice in the election of the Johnson County jailer, and he is in no way responsible to them. The legislative decision to authorize the regional jail authority to operate a regional jail gives to the citizens of each county concerned a voice in the operation and management of the regional jail, and the appointment of an administrator for that purpose by the regional jail authority imposes upon him some responsibility to the people of all of the counties involved, not just the citizens of the county where the regional jail is located.

■ Where there is no ambiguity in a statute there is no need to resort to the rules of statutory construction in interpreting it. The words of the statute are simply accorded their commonly understood meaning. A statute which plainly grants to the regional jail authority the power to operate a regional jail cannot be construed to give the jailer of the county in which the regional jail is located the authority to operate it. It is also beyond question that a public body, such as a regional jail authority with power to operate a regional jail, may do so through the designation of an agent responsible to the authority to actually operate and manage the facility subject to supervision by the authority.

■ There is no conflict between K.R.S. 71.020 and K.R.S. 441.800(2)(b). K.R.S. 71.-020 provides:

"Each jailer shall have the custody, rule and charge of the jail in his county and of all persons in the jail and shall keep the same himself or by his deputy or deputies."

K.R.S. 71.020 was enacted long before any statutory provision was made for the formation of a regional jail authority and the construction of regional jails. The jail referred to in K.R.S. 71.020 was a county jail.

As a matter of fact, K.R.S. 441.005 provides for a separate definition of the terms "jail" and "regional jail." A jail is defined as a county jail or correctional and detention facility while a regional jail is defined as a jail "owned and operated by two or more counties through a regional jail authority as provided in K.R.S. 441.800."

K.R.S. 71.020 which grants to the jailer the right to operate a county jail does not conflict with K.R.S. 441.800 which grants to the regional jail authority the power to operate a regional jail.

K.R.S. 441.800(2)(c) which grants to the regional jail authority the power to exercise the power and duties of counties in relation to jails is not a limitation upon the power of the regional jail authority to operate regional jails but is instead an addition to its power. K.R.S. 441.025 states that a county may provide for the incarceration of prisoners by: "(a) providing and maintaining a jail in the county." It does not provide that a fiscal court may operate a jail because that is a responsibility granted to the jailer by K.R.S. 71.020. As to regional jails, however, K.R.S. 441.800 provides not only for the *maintenance* of the regional jail by the regional jail authority but also provides for its *operation* by the regional jail authority.

K.R.S. 441.800 does not usurp the functions of a county jailer. The construction of a regional jail does not require the abolition or discontinuance of a county jail. If, however, after the construction of a regional jail, a county wishes to discontinue its

county jail, K.R.S. 441.510(4) prescribes the duties of the county jailer.

■ We concur in the decision of the trial court that the power vested in the regional jail authority to "provide for the operation and maintenance" of the regional jail necessarily carries with it the power to employ an administrator and other personnel to operate the regional jail free of any direct participation by the jailers and fiscal courts of the counties involved. We likewise agree with the determination by the trial court that one member county of a validly formed four-county regional jail authority (the validity of which formation for the purposes of this litigation has been admitted) cannot unilaterally withdraw from the authority unless it has at least the consent of all of the counties which formed the authority.

Because it is not contended that Lawrence County had the consent of either Magoffin County or Martin County to withdraw, its attempted withdrawal and the release by Johnson County Fiscal Court is invalidated, and Lawrence County is obligated for its proportional part of the funds necessary to defray the bonded indebtedness.

The decision of the trial court, made final and appealable by its express language, did not address the question of which of the contesting persons are the proper representatives of Lawrence County as members of the regional jail authority. That question remains for decision by the Johnson Circuit Court.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

STEPHENS, C.J., and GANT, LAMBERT, LEIBSON, and VANCE, JJ., concur.

COMBS, J., not sitting.

WINTERSHEIMER, J., dissents by separate dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because based on the evidence before this Court, no regional jail authority has been validly created pursuant to statute. The truly significant question of operation of a regional jail authority is considered only in the abstract by means of an advisory opinion. The threshold statutory requirements have been ignored.

The ordinances and other legislative actions of each county make no mention of which, if any, other county is to participate in the authority. At least one of the four counties which was apparently intended as a necessary participant in the authority has not adopted any ordinance or appropriate legislative document. The ordinances establishing a regional jail authority should set out which counties are doing so and not merely that the county adopting the ordinance is establishing an authority. Clearly, it cannot do that alone. *See* K.R.S. 441.800(1).

The facts in the record indicate that the fiscal courts of Johnson, Lawrence, Magoffin and Martin counties attempted to establish a regional jail authority pursuant to K.R.S. 441.800 *et seq.* A site in Johnson county was chosen for the regional jail and Johnson county became the leading party in establishing the facility. It acquired title to the land, issued bonds on which it was the sole obligor and constructed the facility. According to the plan, Johnson county would make payment on the bonded indebtedness and bill the other participants on a pro rata basis based on population.

The jail is not owned and operated by the authority. The record shows it is owned entirely by Johnson county. Although it is contended that Johnson county is merely holding the property in trust, nothing in the deed supports such an interpretation. Individuals must follow statutory constructions in the development of their contracts and the government must be held to the same standard. Here only Johnson county's name is on both the deed and the bonds.

To compound the problems already obvious in this entire situation a majority of our court has decided to reach the important but entirely theoretical question of whether a valid authority has been established. A careful review of the record indicates that this certainly is not the case in which to address such an important question.

I can agree with the majority when it determines that KRS 441.005 provides for a separate definition of the terms "jail" and "regional jail." A jail is a county jail or correctional and detention facility while a regional jail is defined as being a jail owned and operated by two or more counties through a jail authority. K.R.S. 71.020 which grants the jailer the right to operate a county jail does not conflict with K.R.S. 441.800 which grants a regional jail authority the power to operate a regional jail. The regional jail statute does not usurp the functions of a county jailer. Unfortunately, it is a sad commentary on our current society that there is probably a significant need for both a county jail and a regional jail authority in many parts of this Commonwealth.